# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Action No. 06-cv-00993-LTB

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Corporation,

    Plaintiff,

v.

EAGLE GENERAL CONTRACTORS, INC., a Colorado corporation,
KUNKEL CONSTRUCTION, INC., a Colorado corporation,
GLENN S. KUNKEL, an individual,
ELOY DURAN, an individual, and
DEBBIE DURAN, an individual,

    Defendants.

_____

# ORDER
_____

This is a Declaratory Judgment action to determine Plaintiff, American Family Mutual Insurance Company's ("American Family"), coverage obligations to Defendants Glen S. Kunkel and Kunkel Construction, Inc. (collectively "KCI"). This case is before me on American Family's Motion for Summary Judgment [**Docket # 45**] and supporting Brief [**Docket # 46**], Defendants, Eagle General Contractors, Inc., Eloy Duran and Debbie Duran (collectively "the Durans"), and KCI's Responses and supporting Briefs [**Docket ## 53, 54, 57**], and American Family's Reply [**Docket # 58**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, pleadings, and the case file, and for the reasons stated below, I DENY Plaintiff's motion [**Docket # 45**].

## I. BACKGROUND

Kunkel formed KCI in June 1997.  In 1999, Kunkel formed another construction company—Defendant Eagle General Contractors, Inc. ("Eagle")—with Lorenz Carstensen, Jr.  Carstensen and Kunkel each owned a 50% share of Eagle.  Eagle filed a Certificate of Trade Name with the Colorado Secretary of State to use the trade name "Eagle Custom Homes."  Carstensen procured liability insurance coverage for Eagle from American Family agent Ken Hamacher in 2001 ("Eagle policy") with "Eagle General Contractors, Inc." as the named insured.  The policy was successfully renewed until its cancellation on August 14, 2005.  Eagle ceased doing business in May 2005 and voluntarily dissolved on December 16, 2005.

In November 2004, KCI contracted with the Durans to build a home.  The Durans' lender required KCI to have liability insurance.  KCI acquired liability coverage under an April 2005 modification of the terms of the Eagle policy that changed the named insured to "EAGLE GENERAL CONTRACTORS INC DBA KCI."  The Durans subsequently sued KCI in Denver County District Court for construction defects ("underlying lawsuit").  American Family accepted the tender of defense of KCI under an express reservation of rights set forth in an April 2006 letter.  American Family now asserts KCI was fraudulently added to the Eagle policy.  American Family seeks a declaratory judgment to reform the Eagle policy to exclude KCI, declare KCI is not an insured under the Eagle policy, declare American Family does not have a duty to defend the underlying lawsuit, and declare American Family is entitled to be reimbursed for costs incurred defending KCI in the underlying lawsuit.

## II.  STANDARD OF REVIEW

The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief.  *See Cloverland-Green Spring Dairies, Inc. v. Penn. Milk Mktg. Bd.*, 298 F.3d 201, 210 n.12 (3d Cir. 2002) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)).  The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Summary judgment is not proper if—viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for that party.  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined.  *Celotex*, *supra*, 477 U.S. at 322.  If there are genuine issues of fact, the granting of summary judgment in a declaratory judgment action is not in order.  *United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1149 (10th Cir. 1974).  It is not enough that the evidence be merely colorable; the burden is on the non-moving party to come forward with specific facts showing a genuine issue for trial.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment, therefore, is granted only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254.  The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.* Accordingly, in a fraud case, the non-moving party must show material facts in dispute by a preponderance of the evidence in order to defeat a motion for summary judgment.  Defendants meet this burden if they set forth evidence that—if believed by the ultimate factfinder—makes it more likely than not their conduct did not amount to fraud.  *See*, *e.g.*, COLO. JURY INSTR., CIVIL 3:1 (2006) ("To prove something by a 'preponderance of the evidence' means to prove that it is more probably true than not.").

### III. DISCUSSION

It is undisputed that Colorado state law applies to the fraud analysis.  In order to avoid its obligations to KCI under the Eagle policy, American Family must prove by a preponderance of the evidence that (1) Kunkel made a false statement of fact or concealed a fact in his application for insurance; (2) Kunkel knowingly made the false statement or concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by American Family; (4) American Family was ignorant of the false statement or concealment of fact and should not be charged with knowledge of the fact; and (5) American Family relied to its detriment on the false statement or concealment of fact in issuing the policy. *Hollinger v. Mut. Benefit Life Ins. Co.*, 560 P.2d 824, 827 (Colo. 1977).

The parties do not dispute that Kunkel and KCI contacted American Family for the purpose of acquiring liability insurance on the Durans' home contract. American Family asserts Kunkel fraudulently represented KCI was a subsidiary of Eagle and Eagle was doing business as KCI. Kunkel, on the other hand, asserts he was forthcoming with Eagle's American Family agent, Ken Hamacher, regarding the relationship between Kunkel, Eagle, and KCI, and that Hamacher changed the Eagle policy with full knowledge that KCI was a separate legal entity. The parties do not dispute—for the purposes of summary judgment—the materiality of the alleged misrepresentations or whether American Family relied on the alleged misrepresentations to its detriment. Thus, resolution of this summary judgment motion turns on (A) whether Kunkel made a false statement of fact or concealed a fact when he requested liability coverage for the Duran contract; (B) whether such false statement or concealment was knowing; and (C) whether American Family had knowledge of the false statement or concealment.

### A. Kunkel's false statements

American Family asserts Kunkel misrepresented that Eagle was doing business as ("d/b/a") KCI in both an April 15, 2005, phone call with Hamacher and on the application to change the named insured to include KCI as a d/b/a of Eagle. The burden of proving an insured made fraudulent statements for purposes of procuring insurance is on the insurer. *See First. Nat. Bank of Manhattan, Kan. v. Modern Woodmen of Am.*, 486 F.2d 10, 14 (10th Cir. 1973). Because it bears the burden of proving fraud by a preponderance of the evidence, American Family—in order to obtain summary judgment—must provide credible evidence that would entitle it to a directed verdict if uncontroverted at trial. *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo.

1991). If American Family meets this requirement, the burden then shifts to Kunkel to demonstrate a genuine issue of material fact. *Id*.

Hamacher's deposition testimony supports American Family's assertions regarding the conversation between Kunkel and Hamacher. The burden therefore shifts to Kunkel to demonstrate a genuine issue of material fact. *Id*. Kunkel submitted an affidavit stating he never told Hamacher that Eagle was doing business as KCI, but rather he informed Hamacher of the companies' business relationship and was told not to worry about it and that Hamacher would take care of it. The affidavit is sufficiently plausible and specific as to the date and content of the conversation between Kunkel and Hamacher to raise a genuine issue of material fact regarding the April 15, 2005, phone call. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

The same cannot be said of the application to change the named insured to include KCI as a d/b/a of Eagle. Even if I take all of Kunkel's assertions regarding his conversations with Hamacher to be true, it is indisputable that the application contained false information: at no time did Eagle "do business as" KCI under Colorado law. *See* Beat U. Steiner, *Entity and Trade Name Registration Requirements and Customs in Colorado*, 28-JAN COLO. LAW. 5 (1999) (discussing COLO. REV. STAT. §§ 7-71-101 through 7-71-109).

### B.  Kunkel's knowledge

There is no genuine dispute that the application to change the named insured contained inaccurate information. In light of the open question whether Hamacher knew the true relationship between Eagle and KCI when he filled out the application—which Kunkel subsequently signed—to change the named insured to include KCI, however, a question of fact

exists whether Kunkel's signing of the application amounts to a knowing false statement or concealment.

An insured is usually charged with constructive knowledge of the information contained in an insurance application, even when such information is filled out by an insurance agent. *Lease*, *supra*, 755 F. Supp. at 952. However, the information at issue here—whether KCI was properly a d/b/a of Eagle—is not the type of factually inaccurate information that an insured would necessarily recognize by reviewing the policy application. Instead, as American Family's pleadings make clear, the question of whether a business can properly be considered a d/b/a of another is an abstract legal question that goes to the scope of the underlying policy.

Colorado courts and the Tenth Circuit recognize that overzealous insurance agents may make inaccurate representations that are understandably relied upon by persons applying for insurance coverage. *See, e.g., Cadez v. Gen. Cas. Co.*, 298 F.2d 535, 537 (10th Cir. 1961); *Lease*, *supra*, 755 F. Supp. at 952; *Wade v. Olinger Life Ins. Co.*, 560 P.2d 446, 450 (Colo. 1977). "If an insurance agent is negligent in his interpretation" of an insurance requirement, "the responsibility for such error must lie with the insurer." *Wade*, 560 P.2d at 450. Thus, when an agent's inaccurate representation goes to a term or question underlying the policy, rather than the factual predicate upon which the policy was issued, I will not assume the insured's inaccurate responses were made with knowledge of their falsity. *See Lease*, 755 F. Supp. at 952; *Wade*, 560 P.2d at 450.

While Colorado law holds that Kunkel's signing of the application filled out by Hamacher binds him to the statements contained therein, signing the application is not sufficient evidence of knowledge of fraud to allow for summary judgment. *See Commercial Ins. Co. of Newark, N.J. v.*

*Smith*, 417 F.2d 1330, 1336 (10th Cir. 1969) ("Even though Dr. Smith may be held to have adopted the statements in the application, this did not shift the burden of proving fraud which was the critical issue.  The company has the affirmative burden in avoiding a policy.").  If Hamacher negligently represented to Kunkel—as Kunkel asserts he did—that KCI could be included under the Eagle policy as a d/b/a without incurring additional premiums, Kunkel's reliance on this representation could be considered reasonable by a trier of fact even if such representation were legally inaccurate under Colorado law.  Kunkel's alleged reliance on Hamacher's representations regarding the terms and scope of the insurance application and policy raises a genuine issue of material fact whether Kunkel's misrepresentation was knowing.  *See Lease*, *supra*, 755 F. Supp. at 952.

### C.  American Family's knowledge

Kunkel's affidavit maintains that Hamacher was fully apprised of Eagle's relationship with KCI.  Hamacher's deposition, in turn, acknowledges he was familiar with both corporations' principals, lines of work, subcontractors, and claims history prior to adding KCI as a d/b/a of Eagle in April 2005.  Viewing Kunkel's affidavit and Hamacher's deposition in the light most favorable to Defendants, a reasonable jury could find that American Family knew—through its agent Hamacher—that KCI was not a legal d/b/a of Eagle.

### IV.  CONCLUSION

A material question of fact exists whether Kunkel misrepresented the nature of KCI's business relationship with Eagle in his April 15, 2005, conversation with American Family's agent Ken Hamacher.  Although the falsity of the application to change the named insured is not in doubt, a reasonable jury could find that the misrepresentation was not knowing.  In addition, a

reasonable jury could find that Hamacher knew KCI was not a d/b/a of Eagle when he drafted the application to change to named insured to "EAGLE GENERAL CONTRACTORS INC DBA KCI." Accordingly, Plaintiff's Motion for Summary Judgment [**Docket # 45**] is DENIED.

Dated: October __18__, 2007.

BY THE COURT:

    s/Lewis T. Babcock
Lewis T. Babcock, Judge